**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

OSAMAH ALSAIDI,

    Plaintiff,

    v.

THE CITY OF PATERSON, *et al*.,

    Defendants.

No. 22cv6697 (EP) (JSA)

**OPINION**

Plaintiff Osamah Alsaidi ("Alsaidi") alleges various Constitutional and state law claims against Defendants the City of Paterson ("Paterson" or the "City"), Paterson Police Department ("PPD"), and various PPD officials in connection with an allegedly unlawful arrest in Paterson, New Jersey in December 2020. D.E. 1 ("Complaint" or "Compl.").

Defendants Paterson, PPD, and Former Police Chief Ibrahim Bayorca ("Former Chief Bayorca"), move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). D.E.s 60 ("Paterson Motion"), 60-1 ("Paterson Br."). Defendant Acting Police Chief Engelbert Ribeiro ("Acting Chief Ribeiro") also moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). D.E.s 62 ("Ribeiro Motion"), 62-1 ("Ribeiro Br."). The Court decides the matter without oral argument. *See* Fed. R. Civ. P. 78; L.Civ.R.78.1(b). For the reasons below, the Court will **GRANT** the Paterson and Ribeiro Motions.

## I.     PROCEDURAL HISTORY

Alsaidi opposes both motions.   D.E.s 66 ("Paterson Opp'n"), 65 ("Ribeiro Opp'n"). Defendants Paterson, PPD, and Former Chief Bayorca reply.   D.E. 67 ("Reply").   Defendant Acting Chief Ribeiro incorporates the Reply by reference.   D.E. 68.

## II.     BACKGROUND[1]

Alsaidi is a New Jersey resident of Yemeni descent.   Compl. ¶ 2.   On December 14, 2020, Alsaidi was walking down Madison Avenue in Paterson.   *Id.* ¶ 17.   Defendants Officers Kevin Patino ("Officer Patino") and Officer Kendry Tineo-Restituyo ("Officer Tineo-Restituyo") arrived in an unmarked PPD vehicle while wearing tactical vests marked "Police" and questioned Alsaidi. *Id.* ¶¶ 16-17.   Officer Tineo-Restituyo asked Alsaidi "What did you say?" to which Alsaidi responded "I said nothing."   *Id.* ¶¶ 17-18.   Officer Tineo-Restituyo again asked Alsaidi "What did you say?" to which Alsaidi responded "I said nothing."   *Id.* ¶ 18.   For the third time, Officer Tineo-Restituyo asked Alsaidi "What did you say?" and Alsaidi responded "I said nothing keep going." *Id.*

Officer Tineo-Restituyo then drove the vehicle to block Alsaidi from walking, and Officers Patino and Tineo-Restituyo forcefully grabbed Alsaidi's arms and pushed him against a truck parked on the street.   *Id.* ¶ 19.   Officer Patino struck Alsaidi in the face and body several times, while Officer Tineo-Restituyo picked Alsaidi up and threw him on the ground.   *Id.* ¶¶ 20-21. Alsaidi blacked out after Officers Patino and Tineo-Restituyo repeatedly struck Alsaidi on his

---

[1] The facts in this section are taken from the well-pled factual allegations in the Complaint, which the Court presumes to be true for purposes of resolving the motions to dismiss.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

body and head while he was face down on the street.  *Id.* ¶ 22.  Alsaidi maintains that he did not violate any law, resist arrest, or act in anyway to warrant use of force.  *Id.* ¶ 40.

Alsaidi was then arrested and taken to Paterson Police Station, where his requests for medical treatment related to his injuries and Type 1 diabetes were ignored.  *Id.* ¶ 24.  Defendant Officer Bishnu McNight ("Officer McNight") and an unnamed partner transferred Alsaidi to St. Joseph Hospital in Paterson, New Jersey.  *Id.* ¶ 25.  Officer McNight forcibly removed Alsaidi from the hospital before he could speak to a doctor and walked him to the police car door "furthest from the hospital."  *Id.* ¶¶ 26-27.  Alsaidi stated "You took me to this side to get away from the camera," to which Officer McNight responded "Yes, because I'm smarter than you."  *Id.* ¶ 27.  Officer McNight then punched Alsaidi, pushed him into the vehicle, and took him back to Paterson Police Station.  *Id.* ¶ 28.

Officer Patino later filed a police report with PPD describing the incident.  *Id.* ¶ 29.  He wrote that officers responded to a report of a suspicious person, and a male (later identified as Alsaidi) walked towards the officers "screaming profanities and acting belligerent."  *Id.*  Alsaidi purportedly took an "aggressive fighting stance by blading his body and clutching his fist" and struck Officer Patino with a closed fist.  *Id.*  Officer Patino further wrote that he struck Alsaidi in the face with a closed fist, at which point Alsaidi "leaned in and grabbed on to this officer's vest and attempted to remove my police issued radio from my radio pouch."  *Id.*  He described that Officer Tineo-Restituyo removed Alsaidi and put him in a "compliance hold," advising him to stop resisting arrest.  *Id.*  Alsaidi, according to the report, was then taken to the ground and handcuffed.  *Id.*

Alsaidi contests the accuracy of various statements in the police report, including that he acted belligerently, took an aggressive fighting stance, and struck Officer Patino with a closed fist.

*Id.* ¶ 30.  He also states that the report omits that Officers Patino and Tineo-Restituyo repeatedly hit Alsaidi while he was laying on the ground.  *Id.*

Alsaidi was then charged—according to him, without probable cause—with Disorderly Conduct, N.J.S.A 2C:33-2B; Aggravated Assault on a Law Enforcement Officer, N.J.S.A. 2C:12-1B(5)(A); and Resisting Arrest, N.J.S.A. 2C:29-2A(3)(A).  *Id.* ¶¶ 32, 82.  The charges were dismissed upon the motion of the State of New Jersey, who stated on the record that it could not meet its burden.  *Id.* ¶ 33.

Alsaidi alleges that the PPD failed to adopt policies and adequately train and supervise employees to avoid Constitutional rights violations.  *Id.* ¶ 61-63.  Specifically, he alleges Paterson did not fund policies and training programs to recognize and discipline its employees for the use of excessive force or take actions to prevent injury and death due to the use of excessive force.  *Id.* ¶ 65.  Alsaidi cites the PPD's well-documented history of failing to investigate misconduct.  *Id.* ¶ 66 (citing *Colon v. City of Paterson*, No. 12-1653, 2014 WL 4441503 (D.N.J. Sept. 9, 2014)).  He also alleges arrests by federal authorities of PPD officers in the past for crimes in their official capacities.  *Id.* ¶ 68.  Alsaidi further alleges that Defendants conspired with each other to falsely arrest him, use excessive force, unlawfully search and seize him, and retaliate against him for exercising his First Amendment rights.  *Id.* ¶¶ 90, 156.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached

to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Finally, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

## IV.   ANALYSIS

The Court summarizes Plaintiff's claims and which Defendants seek dismissal of which counts below.

1. **Count I**: Section 1983 (Excessive Force) against Defendants Officers Patino, Tineo-Restituyo, McNight, and John Does.

2. **Count II**: Section 1983 (Wrongful Arrest) against all Defendants. All moving Defendants seek dismissal. Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal in both their official and individual capacities.

3. **Count III**: Section 1983 (False Imprisonment) against all Defendants. All moving Defendants seek dismissal. Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal in both their official and individual capacities.

4. **Count IV**: Section 1983 Municipal Liability (*Monell*) against all Defendants.  All moving Defendants seek dismissal.  Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal in both their official and individual capacities.

5. **Count V**: Section 1983 (Malicious Prosecution) against all Defendants.  All moving Defendants seek dismissal.  Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal in both their official and individual capacities.

6. **Count VI**: Section 1985 (Conspiracy) against all Defendants.  All moving Defendants seek dismissal.

7. **Count VII**: New Jersey Civil Rights Act ("CRA"), Art. I, Section 1 against all Defendants. All moving Defendants seek dismissal.  Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal in both their official and individual capacities.

8. **Count VIII**: CRA, Art. I, Section 7 against all Defendants.  All moving Defendants seek dismissal.  Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal in both their official and individual capacities.

9. **Count IX**: Assault and Battery against all Defendants in their individual capacities. Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal.

10. **Count X**: Malicious Prosecution against all Defendants in their individual capacities. Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal.

11. **Count XI**: Gross Negligence against all Defendants in their individual capacities.  Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal.

12. **Count XII**: Negligence against all Defendants in their individual capacities.  Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal.

13. **Count XIII**: Negligent and Intentional Infliction of Emotional Distress against all Defendants in their individual capacities. Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal.

14. **Count XIV**: *Respondeat Superior* against Paterson, PPD, Defendant Former Chief Bayorca, and Defendant Acting Chief Ribeiro. Defendant PPD, Defendant Former Chief Bayorca, and Defendant Acting Chief Ribeiro seek dismissal.

15. **Count XV**: False Imprisonment against all Defendants in their individual capacities. Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal.

16. **Count XVI**: Failure to Intervene against Defendants John Does.

17. **Count XVII**: First Amendment retaliation against all Defendants in their individual capacities. Defendants Former Chief Bayorca and Acting Chief Ribeiro seek dismissal.

### A. The Section 1985 Conspiracy (Count VI) Claim Will Be Dismissed

Alsaidi alleges that Defendants "conspired between and among themselves beginning on or about December 14, 2020 . . . to violate Plaintiff's constitutional and civil rights." Compl. ¶ 87. He alleges they "agreed explicitly and through their actions" to violate his rights by "falsely arresting him, using excessive force, and unlawfully searching and seizing him." *Id.* ¶ 88. Alsaidi does not specify which subsection of Section 1985 he is invoking, though contextually, it appears to be subsection (3), "[d]epriving persons of rights or privileges." 42 U.S.C. § 1985(3).

Plaintiffs must allege the following elements of a Section 1985(3) claim: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*,

7

440 F.3d 131, 134 (3d Cir. 2006) (cleaned up).  "Claims under this section, based on equal protection, must allege that 'racial, or otherwise class-based, invidiously discriminatory animus lay behind the defendants' actions.'"  *Hutchinson v. Bergen Cnty. Sheriff's Office*, No. 22-993, 2022 WL 1639153, at *5 (D.N.J. May 24, 2022) (quoting *Parrott v. Abramsen*, 200 F. App'x 163, 165 (3d Cir. 2006)).

All Defendants seek dismissal of this claim because there are insufficient factual allegations regarding race-based discriminatory animus.  Paterson Br. at 13; Ribeiro Br. at 9. Alsaidi responds by pointing to one paragraph in the Complaint noting he is of Yemeni descent. Paterson Opp'n at 9 (citing Compl. ¶ 2); Ribeiro Opp'n at 12 (same).

Alsaidi's stray reference to his Yemeni background does not sufficiently allege race-based discriminatory animus, as required in a Section 1985(3) claim.  *Farber*, 440 F.3d at 136 (noting requirement that the conspirators be "*motivated* by . . . invidiously discriminatory animus.") (emphasis added).  Alsaidi has not alleged that any of Defendants purportedly conspired with each other to violate his Constitutional rights *because* of his racial background.  Further, he has made only broad, conclusory allegations of an overarching conspiracy, but has not identified specifically how the Defendants conspired with each other.  Accordingly, the Court will **DISMISS** Count VI against all moving Defendants *without prejudice*.

### B.  Defendant Paterson Police Department Will Be Dismissed As an Improper Party

Alsaidi asserts multiple claims against the PPD: Count II (Section 1983 wrongful arrest); Count III (Section 1983 false imprisonment); Count IV (*Monell*); Count V (Section 1983 malicious prosecution); Count VI (Section 1985 conspiracy); Count VII (CRA Art. I, Section 1); Count VIII (CRA Art. I, Section 7); and Count XIV (*respondeat superior*).  Defendant PPD argues it is not a proper defendant in this action because "[i]n New Jersey a municipal police department is not an

entity separate from the municipality." Paterson Br. at 15 (citing N.J.S.A. § 40A: 14-118). The Court agrees and will dismiss Defendant PPD from this action.

"In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (cleaned up). All Section 1983 claims must be dismissed against Defendant PPD. Since the CRA is interpreted co-extensively with Section 1983, the Court will also dismiss those claims against Defendant PPD. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011) (collecting cases). Because Alsaidi does not address these arguments in briefing, he waives all counts as against Defendant PPD. *See Griglak v. CTX Mortg. Co., LLC*, No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count."); *see also O'Neal v. Middletown Twp.*, No. 18-5269, 2019 WL 77066, at *3 (D.N.J. Jan. 2, 2019) (finding plaintiffs conceded point regarding police department's dismissal because they failed to present substantive argument in opposition). Consequently, the Court will **DISMISS** all claims against the Paterson Police Department *with prejudice*.

### C. The *Monell* Claim (Count IV) Will Be Dismissed

Municipalities are subject to suit under 42 U.S.C. § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). In Count IV, Alsaidi asserts a § 1983 municipal liability claim under two different theories set forth in *Monell*. First, he alleges that the City failed to adopt policies to prevent the use of force to individuals in its custody. Compl. ¶ 65. Second, Alsaidi alleges that the City failed to train its employees to comply with state and federal law and safeguard against violations of the Fourth Amendment, among other rights. *Id.* ¶ 61. Alsaidi cites the PPD's

documented history of failing to investigate misconduct. *Id.* ¶ 66 (citing *Colon*, 2014 WL 4441503).[2]  He also notes (without citations) the numerous arrests by federal authorities of PPD officers in the past for crimes in their official capacities. *Id.* ¶ 68.  Construing the Complaint in the light most favorable to the Plaintiff, Alsaidi alleges (1) Paterson has a custom of permitting excessive use of force and (2) Paterson failed to train employees to adequately investigate excessive force incidents. *Id.* ¶¶ 67-70.

"[M]unicipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (quoting *Monell*, 436 U.S. at 694).  "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Id.* (cleaned up).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citation omitted).  Custom may be established "by proof of knowledge and acquiescence." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989).

"However, proof of the mere existence of an unlawful policy or custom is not enough to maintain a § 1983 action. A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered." *Bielevicz*, 915 F.2d at 850 (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)).  For such a policy or custom claim

---

[2] Plaintiff does not provide a pincite to *Colon*, but the Court infers the relevant portion of the decision. *See id.*, at *7 (plaintiff's expert provided statistics that in Paterson's department of 519 officers, "citizens filed 610 complaints of excessive force over the course of five years, and only five of them were sustained")).

to survive Rule 12(b)(6) dismissal, a plaintiff must demonstrate an "affirmative link" between the policy or custom and the particular constitutional violation he alleges, such as where the plaintiff shows that the municipality "had knowledge of similar unlawful conduct in the past, . . . failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (cleaned up).

A Section 1983 municipal liability claim may also be premised on a municipality's failure to properly train, supervise, or discipline its employees. *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation . . . under § 1983."). To plead such a claim, a plaintiff must demonstrate that any such failure "'reflects a deliberate or conscious choice.'" *Roman*, 914 F.3d at 798 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)); *see also Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (explaining that a *Monell* claim that is "predicated on a failure or inadequacy has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality").

Deliberate indifference is plausibly pled by showing that "'(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose

to retain that program.").  "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action . . . .  Ordinarily, 'a pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train.'"  *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (internal citations and brackets omitted); *accord Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").

### a.  *Alsaidi fails to state a* Monell *custom liability claim*

Alsaidi alleges that Paterson "failed to adopt and fund necessary policies and training programs that would recognize and discipline its agents, servants, and/or employees for the use of excessive force, or to take actions to prevent injury and death due to the use of excessive force to individuals in its custody."  Compl. ¶ 65.  He notes the PPD's[3] history of failing to meaningfully investigate misconduct by citing a 2014 D.N.J. case deciding motions for summary judgment in which *that* plaintiff brought forth statistics about claims of excessive force against the PPD.  *Id.* ¶ 66 (citing *Colon*, 2014 WL 4441503).  The Court construes this allegation as similarly asserting that Paterson has a custom of failing to investigate incidents involving excessive force (*i.e.,* a custom of inaction) despite being aware of the need for such investigations.

In opposition, Alsaidi cites numerous press releases and news articles addressing PPD incidents of excessive force and unresolved internal affairs complaints.  Paterson Opp'n at 5-6; Ribeiro Opp'n at 5-6.  He contends that the pleadings "reference the persuasive public record of the history of the use of excessive force by Paterson police officers" and asks the Court to take

---

[3] Though the PPD is an improper defendant, the Court construes the allegations to be against the City, but invokes "the PPD" to accurately reflect Alsaidi's pleadings.

judicial notice of the citations.  Paterson Opp'n at 5-6; Ribeiro Opp'n at 5-8.  Defendants do not

address this position in Reply.  *See generally* Reply.  Before determining the sufficiency of

Alsaidi's allegations, the Court will address each item[4] cited by Alsaidi and determine whether to

take judicial notice.

In deciding 12(b)(6) motions, courts may consider "document[s] integral to or explicitly

relied upon in the complaint."  *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7

(3d Cir. 2016).  None of the documents are explicitly relied upon in the Complaint,[5] which Alsaidi

cannot amend by opposition brief.  *See Pennsylvania ex. Rel Zimmerman v. PepsiCo, Inc.*, 836

F.2d 173, 181 (3d Cir. 1988).  Likewise, courts' ability to judicially notice news articles is limited

---

[4] Alsaidi cites the following: (1) U.S. ATTORNEY'S OFFICE, DISTRICT OF NEW JERSEY, *Three Paterson Police Officers Sentenced for Roles in Violating Individuals' Civil Rights* (Sept. 8, 2022), https://www.justice.gov/usao-nj/pr/three-paterson-police-officers-sentenced-roles-violating-individuals-civil-rights ("NJ USAO Press Release 22-331"); (2) U.S. ATTORNEY'S OFFICE, DISTRICT OF NEW JERSEY, *Two Paterson Police Officers Sentenced to Prison Terms for Roles in Violating Individuals' Civil Rights* (Sept. 9, 2022), https://www.justice.gov/usao-nj/pr/two-paterson-police-officers-sentenced-prison-terms-roles-violating-individuals-civil ("NJ USAO Press Release 22-333"); (3) Deion Johnson, *Paterson police criticized after teen's beating and arrest during back-to-school event*, NJ.COM (Sept. 26, 2022), https://www.nj.com/news/2022/09/paterson-police-criticized-after-teens-beating-and-arrest-during-back-to-school-event.html ("NJ.COM Article"); (4) U.S. ATTORNEY'S OFFICE, DISTRICT OF NEW JERSEY, *Paterson Police Officer Admits Civil Rights Violations* (Feb. 8, 2024), https://www.justice.gov/usao-nj/pr/paterson-police-officer-admits-civil-rights-violations ("NJ USAO Press Release 24-051"); (5) Sophie Nieto-Munoz, *Grand jury indicts Paterson cop over shooting of unarmed man in back*, NEW JERSEY MONITOR (Dec. 7, 2023), https://newjerseymonitor.com/2023/12/07/grand-jury-indicts-paterson-cop-over-shooting-of-unarmed-man-in-back/ ("NJ Monitor Article"); (6) Joe Malinconico, *Paterson police ended 2021 with 134 open internal affairs cases*, PATERSON PRESS (Mar. 1, 2022), https://www.northjersey.com/story/news/paterson-nj-police-internal-affairs-cases-2021/6937895001/ ("Paterson Press Article"); (7) Christopher Maag, *For a Notorious Police Department, This Killing Was the Last Straw*, NEW YORK TIMES (May 30, 2023), https://www.nytimes.com/2023/05/30/nyregion/paterson-police-department-takeover.html ("N.Y. Times Article").

[5] For example, Alsaidi filed his Complaint on November 21, 2022.  Compl.  It is therefore impossible that the pleadings reference the NJ Monitor Article and the N.Y. Times Article, which were published in 2023 or later.  *See* Paterson Opp'n at 5-6; Ribeiro Opp'n at 6-8.

to determining "what was in the public realm at the time, not whether the contents of those articles were in fact true." *Benak ex rel. Alliance Premier Growth Fund v. Alliance Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006).

The Court first assesses NJ USAO Press Release 22-331, NJ USAO Press Release 22-333, and NJ USAO Press Release 24-051.  It is true that "statements from government entities are typically appropriate for judicial notice." *Hall v. Johnson & Johnson*, No. 18-1833, 2019 WL 7207491, at *10 (D.N.J. Dec. 27, 2019).  However, each of these press releases was issued in 2022 or later, at least two years after the incident central to this litigation.  The sentences described therein thus arguably have minimal relevance to the potential custom liability claim here, and the Court declines to take judicial notice of any of these documents. *See Kirby v. Borough of Woodcliff Lake*, No. 20-1670, 2022 WL 2276736, at *3 (D.N.J. June 23, 2022) ("The County argues that Plaintiff cannot rely on events in 2021 to establish that a policy or custom existed in 2018 . . . . The Court agrees, noting that the alleged violations are based on standards that post-date Plaintiff's arrest and detention and involve issues relating to COVID-19, which did not exist while Plaintiff was incarcerated.").

The Court also declines to take judicial notice of the NJ Monitor, N.Y. Times, Paterson Press, and the NJ.com articles, as it is not required to judicially notice facts stated in news articles. *See Benak*, 435 F.3d at 401 n.15. (noting articles "serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true").  Accordingly, the Court will determine whether Alsaidi's Complaint alone sufficiently states a claim for custom liability.  It does not.

"A city's failure to properly investigate claims of excessive force is construed as a tacit authorization of the use of excessive force." *Colon*, 2014 WL 4441503, at *6 (citing *Beck v. City*

*of Philadelphia*, 89 F.3d 966, 967 (3d Cir. 1996); *Merman v. City of Camden*, 824 F. Supp. 2d 581, 590 (D.N.J. 2010)).  Alsaidi must show "that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz*, 915 F.2d at 850.  However, he need not necessarily specifically identify the responsible decisionmaker, as practices "'so permanent and well settled' as to have 'the force of law' [are] ascribable to the municipal decisionmakers." *Anela v. City of Wildwood,* 790 F.2d 1063, 1067 (3d Cir. 1986) (quoting *Monell,* 436 U.S. at 691).

Alsaidi's allegations are too threadbare and conclusory to state a claim for custom liability under *Monell.*  Alsaidi cites "incidents involving force and excessive force by its Officers" that the City knew or should have known about without actually citing those incidents.  Compl. ¶ 67.  His reference to officers' arrests also comes without citations.  *Id.* ¶ 68.  Further, arrests, similar to lawsuits, are "mere allegations" and "do not establish liability or the existence of an unlawful custom." *Simpson v. Ferry*, 202 F. Supp. 3d 444, 453 (E.D. Pa. 2016).

Alsaidi's citation to *Colon* is not enough, as that plaintiff's expert provided statistics about the sparse number of excessive force complaints sustained between 2005 and 2010.  2014 WL 4441503, at *6-7.  He also does not even specifically point to that portion of the decision.  Alsaidi would need to sufficiently allege a widespread practice of tolerating excessive force in place during the underlying event.  Though there is no required timeframe for statistics regarding a municipal custom, Alsaidi must do more than broadly state that the PPD has a history from 2005-2010 of failing to investigate misconduct, Compl. ¶ 66, and point to a more specific custom tethered to his allegations of inaction regarding excessive force incidents.  *See McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."); *Groman v. Twp. of Manalapan*,

47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are insufficient to state a *Monell* claim). Accordingly, the Court will **DISMISS** Alsaidi's custom liability claim under *Monell* against the City *without prejudice*.

As "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue" and "[r]*espondeat superior* or vicarious liability will not attach under § 1983," *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, (1989), the Court will also **DISMISS** *without prejudice* the following claims against the City: Counts II, III, and V (Section 1983 claims) and Counts VII and VIII (CRA claims).

   b. *Alsaidi fails to state a failure-to-train claim*

Alsaidi also alleges that the PPD "failed to properly train and/or supervise the individual Defendants" to ensure officers "would effectively transmit and comply with State and Federal laws and Constitutional rights applicable to any person in pursuit or custody." Compl. ¶¶ 61-63.

A failure-to-train claim "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388. Ordinarily, this requires a showing of a "pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62. "Nevertheless, the Supreme Court posited in *Canton* that in certain situations, the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (quoting *Canton*, 489 U.S. at 390 n.10) (internal marks omitted). This is known as "single-incident" liability. *Id.*

As Alsaidi failed to adequately allege a custom of inaction, he does not state a "pattern of violations" claim. *Connick*, 563 U.S. at 63. Nor does he plead a "single-incident" claim. *Id.* at

64.  While "[t]he need to disrupt an officer's proclivity to immediately resort to force can . . . be described as plainly obvious," *Capps v. Dixon*, No. 20-1118, 2024 WL 340842, at *24 (D.N.J. Jan. 30, 2024), Alsaidi does not adequately plead that *these* officers' conduct "should have placed his supervisors on notice that a future violation was highly likely[.]" *Id.*  Accordingly, the Court will **DISMISS** *without prejudice* Alsaidi's failure-to-train claim against the City.

### D. Section 1983 Claims (Counts II, III, IV, V, and XVII) and CRA Claims (Counts VII and VIII) Against Defendants Former Chief Bayorca and Acting Chief Ribeiro Will Be Dismissed

Alsaidi alleges various Fourth Amendment violations, including wrongful arrest, Compl. ¶¶ 46-52, false imprisonment, *id.* ¶¶ 53-59, and malicious prosecution, *id.* ¶¶ 80-85, as well as *Monell* municipal liability, i*d.* ¶¶ 60-79, and First Amendment retaliation, *id.* ¶¶ 155-61.  He also alleges violations of the New Jersey Constitution.  *Id.* ¶¶ 93-104.

First, as Alsaidi does not address Defendants' official capacity arguments in opposition, those claims are waived.  *See Griglak*, 2010 WL 1424023, at *3 ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count.").  Accordingly, the Court will **DISMISS** the aforementioned counts against Defendants Former Chief Bayorca and Acting Chief Ribeiro in their official capacities *with prejudice*.

The Court will also dismiss these counts as alleged against Defendants in their individual capacities.  Defendants Former Chief Bayorca and Acting Chief Ribeiro argue that there are insufficient facts that the Defendants were personally involved in committing the alleged violations against Alsaidi.  *See* Paterson Br. at 5-8; Ribeiro Br. at 4-7.  They also argue dismissal is warranted because vicarious liability does not exist under Section 1983.  *Id.*  The Court agrees.

Personal involvement in a Section 1983 action "can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Argueta v. U.S. Immigr. & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)) (internal marks omitted). "It is also possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 n.3 (3d Cir. 1995). Supervisor liability can also be established if a supervisor "implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." *Argueta*, 643 F.3d at 72.

Alsaidi's Section 1983 claims against the foregoing Defendants are bound up in his *Monell* allegations. Essentially, he argues that because these Defendants purportedly failed to adequately train employees and implemented violative policies and practices, these Defendants were personally involved in the remaining alleged violations. *See* Paterson Opp'n at 8-9; Ribeiro Opp'n at 11-12. Alsaidi has not alleged any personal direction by either Defendant Former Chief Bayorca or Acting Chief Ribeiro. There are no allegations that either Defendant was present during the underlying event or knew about it. Compl. ¶¶ 15-35.

Accordingly, the Complaint is devoid of allegations that either Defendant had actual knowledge of, let alone acquiesced in, the other Defendant officers' purported actions. And as noted above, "there are insufficient allegations in the Complaint to plead the existence of any policy, practice, or custom" created by the City (and therefore, by either Defendant Former Chief Bayorca or Acting Chief Ribeiro) that Officers Patino, Tineo-Restituyo, and McNight "followed, resulting in an alleged violation of Plaintiff's constitutional rights." *Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 127 (D.N.J. 2017). Accordingly, the Court will **DISMISS** the

remaining Section 1983 claims against Defendants Former Chief Bayorca and Acting Chief Ribeiro in their individual capacities *without prejudice*.  The Court will also **DISMISS** the CRA claims against the Defendants in their individual capacities *without prejudice* as the CRA is interpreted co-extensively with Section 1983.  *See Trafton*, 799 F. Supp. 2d at 443-44.

### E.  The State Law Tort Claims (Counts IX through XV) Will Be Dismissed

Alsaidi lastly alleges a variety of state law tort claims against all Defendants sued in their individual capacities.  *See* Compl. ¶¶ 105-137; 143-48.  He also alleges a standalone *respondeat superior* claim against the City and all supervisors.  *Id.* ¶¶ 138-42.  Defendants Former Chief Bayorca and Acting Chief Ribeiro assert the Complaint does not sufficiently allege they were personally involved in the underlying incident or any other specific conduct.  Paterson Br. at 18-20; Ribeiro Br. at 11-14.[6]

The Court agrees with Defendants.  Alsaidi does not sufficiently plead their involvement in the underlying events, and his theory of supervisory liability does not create personal involvement for purposes of tort claims.  *See* Paterson Opp'n at 13; Ribeiro Opp'n at 17-18.

As to Count IX, assault and battery, "[a]n individual is liable for the common law tort of assault if (a) he acts intending to cause a harmful or offensive contact with the person, or an imminent apprehension of such a contact, and (b) the person is thereby put in such imminent apprehension."  *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 299 (D.N.J. 2015) (citing *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 969 A.2d 1097, 1117 (2009)).  Alsaidi does not allege

---

[6] They also argue the claims are barred by the New Jersey Tort Claims Act ("TCA"), which limits recovery of damages absent proof of injury resulting in permanent loss of a substantial bodily function, permanent disfigurement or dismemberment, or medical treatment expenses in excess of $3,600.  Paterson Br. at 16; Ribeiro Br. at 10-11.  For the reasons below, the Court need not reach this argument.

that Defendants Former Chief Bayorca or Acting Chief Ribeiro were present during the arrest. *See* Compl. ¶¶ 15-35, 105-10.

As to Count X, "[m]alicious prosecution requires the plaintiff to prove four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." *LoBiondo v. Schwartz*, 199 N.J. 62, 90 (2009). Alsaidi does not allege that Defendants Former Chief Bayorca or Acting Chief Ribeiro initiated the criminal action against him. *See* Compl. ¶¶ 15-35, 111-16. He only states that he "was charged" with violations of state law, without stating who initiated the action. *Id.* ¶ 32.

Count XII, negligence, requires plaintiff to establish "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 221 N.J. 36, 110 A.3d 52, 61 (2015) (cleaned up). Count XI, gross negligence, "has the same elements as ordinary negligence because '[n]egligence differs from gross negligence only in degree, not in kind.'" *Doe v. Small*, 654 F. Supp. 3d 376, 395 (D.N.J. 2023) (internal marks and citations omitted). Alsaidi did not allege a duty owed by Defendants Former Chief Bayorca or Acting Chief Ribeiro or a breach of that duty, as there is no allegation that either was present during the arrest. *See* Compl. ¶¶ 15-35, 117-26.

Count XIII is negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED"). IIED requires a showing of "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 365 (1988). "In New Jersey, to state a claim for [NIED], a plaintiff must have either observed the defendant injuring or killing a family member or intimate relation . . . or the defendant must have negligently breached his duty of care owed to the plaintiff in such a way that

it was reasonably foreseeable to cause the plaintiff severe emotional distress." *Johnson v. Peralta*, No. 12-3604, 2013 WL 775541, at *2 (D.N.J. Feb. 27, 2013) (cleaned up). Alsaidi alleges neither, as this count is entirely predicated on the actions surrounding the arrest itself, to which Alsaidi provides no link to Defendants Former Chief Bayorca or Acting Chief Ribeiro. *See* Compl. ¶¶ 15-35, 127-37.

Count XIV, *respondeat superior*, fails. "[T]he doctrine of *respondeat superior* does not provide an independent cause of action under New Jersey law." *Rowan v. City of Bayonne*, 474 F. App'x 875, 878 n.3 (3d Cir. 2012) (citing Carter v. Reynolds, 175 N.J. 402, 815 A.2d 460, 463 (2003)). The Court also notes that "[a]lthough state tort claims can be premised on *respondeat superior,* only an *employer* is vicariously liable for the wrongful acts of an employee committed within the scope of employment." *Hatten v. Bledsoe*, No. 13-209, 2014 WL 5474071, at *2 (M.D. Pa. Oct. 28, 2014) (collecting cases). Defendants Former Chief Bayorca and Acting Chief Ribeiro are not the employers of their subordinates; the City is. The Court will **DISMISS** Count XIV *with prejudice* against Defendants Former Chief Bayorca and Acting Chief Ribeiro. The City did not explicitly address dismissal of this count in its moving papers. Although *sua sponte* dismissal is rarely appropriate, the Court will also **DISMISS** Count XIV against the City *with prejudice* as *respondeat superior* is not a cause of action and is "a legal doctrine under which a court may impose vicarious liability on the employer of a person who has committed some independent tort." *Powell v. Verizon*, No. 19-8418, 2019 WL 4597575, at *13 (D.N.J. Sept. 20, 2019); *see also Goodwin v. Castille*, 465 F. App'x 157, 163 (3d Cir. 2012) (affirming *sua sponte* dismissal under Rule 12(b)(6)).

Lastly, regarding Count XV, "[t]he tort of false imprisonment has two elements: (1) an arrest or detention of the person against his will; (2) done without proper legal authority or legal

justification." *Monroe v. City of Hoboken*, No. 11-2556, 2012 WL 1191177, at *13 (D.N.J. Apr. 10, 2012) (cleaned up).  Again, as Alsaidi does not allege any involvement of Defendants Former Chief Bayorca or Acting Chief Ribeiro in the arrest itself, this claim fails.  *See* Compl. ¶¶ 15-35, 143-48.

For the above reasons, Alsaidi fails to state any state law tort claim against either Defendant and the Court will **DISMISS** them *without prejudice*, except for Count XIV which it will **DISMISS** *with prejudice*.

## V.      CONCLUSION

For the reasons above, the Court will **GRANT** the Motion of Paterson, PPD, and Former Chief Bayorca, D.E. 60, and **GRANT** Defendant Ribeiro's Motion, D.E. 62.  All counts against the individual Defendant officers remain, as those parties did not move for dismissal.  An appropriate Order accompanies this Opinion.

Dated: September 5, 2024

Evelyn Padin, U.S.D.J.

22